Laurence Greenwood, M.D.
424 Midsummer Dr.
Gaithersburg, MD 20878
301-335-3854

April 7, 2007

To Whom It May Concern:

I am writing to update previous letters of August 2, 2006, October 5, 2006, and December 10, 2006, regarding Tracey McGuire, in order to update the course of her treatment, and to repeat my request that she not be incarcerated. I am more convinced than ever that she would commit suicide if incarcerated.

Since December 10, 2006, I have had 50 additional treatment sessions with Ms. McGuire. These have included 38 individual sessions, and 12 sessions in a weekly woman's group therapy. I have also had several phone calls to her mother at times of crisis. In addition Ms. McGuire has continued participation in the therapeutic day program at Care Connection, three hours per day, Monday through Friday.

In some ways Ms. McGuire has made significant progress. She has needed only one crisis intervention hospitalization, in December 2006. She has committed to therapy with me and at the Care Connection program. She is living a healthy lifestyle. She has markedly reduced interpersonal problems, particularly with her mother and fiancé, which had been triggers for suicidal crises. She has a much better relationship with her mother. She has been able to separate from her fiancé because of his verbal and occasional physical abuse, and has maintained this separation for four months.

Ms. McGuire has developed hope that medication and therapy will work. When she is not emotionally triggered, she wants to live an orderly life to provide for her son a healthy upbringing. She has become much more dependent on myself and the Care Connection program in a healthy way. She has learned to telephone for help when she is upset. She first usually calls her mother or another member of the group therapy. If this call is not sufficient to calm down, she contacts her case manager or other staff at Care Connection. Lastly, she contacts me if necessary.

However, she continues to be triggered by criticism, fears of rejection, or feeling verbally or physically threatened, into psychotic states with very strong suicidal urges. At these times, she regresses and is pounded by auditory hallucinations, condemning her and demanding her suicide. When this is not too severe, she can call for help. At the same time, as a result of the voices, she believes that she is a despicable person, responsible for her childhood sexual abuse and every other abusive situation throughout her life. The temptation to suicide remains very strong, and the balance in favor of requesting help is tenuous.

In the situation, in December, when she again attempted suicide, Ms. McGuire was feeling suicidal because of separation from her fiancé, his derogatory statements, and incorrect criticism by another patient to the staff at the Care Connection program. She feared she would lose her good reputation there. She agreed to an elective hospitalization at the Psychiatric Institute of Washington. As she was making admission arrangements, she had an epileptic seizure at the Care Connection program. She needed to be taken to the nearest emergency room. She wound up being admitted to Southern Maryland Hospital psychiatric unit, where she had previously been administered a long acting intramuscular injection of Haldol Decanoate, resulting in a severe adverse drug reaction lasting 4-6 weeks. She became psychotic and repeatedly swallowed coins. Again she needed endoscopy to remove them.

Unfortunately, Ms. McGuire's actual suicide risk has increased in the past month because she has changed her proposed method of suicide. She had given up pill overdoses because she survived. She had thought that swallowing coins would obstruct her breathing and cause her to suffocate. Since the last attempt, she has realized that this outcome is unlikely. The auditory hallucinations now tell her to swallow needles or pins.

Derogatory and humiliating auditory hallucinations continue on a regular basis, whenever she is under stress, and sometimes when she simply does not have constructive activities to distract her. Consequently, Ms. McGuire hates to miss a single day of Care Connection treatment.

A recent crisis illustrates the major factors at work in Ms. McGuire's illness. During the last week in March, while riding on the van with other patients to the Care Connection program, Ms. McGuire witnessed a male patient poking a female patient next to him. After asking the male patient to stop, the female patient asked for assistance. Ms. McGuire politely asked the man to stop. The man apologized, but Ms. McGuire rejected his apology because the man provoked more helpless patients in this way on a regular basis and used apology to avoid consequences. The man became enraged. He tried to choke Ms. McGuire, pulled a lot of hair out of her head, and punched her in the mouth. Police were needed to control him. Later, a sympathetic staff person innocently told Ms. McGuire that she should try to let staff handle these issues, rather than trying to be helpful. I was personally unavailable because I was on vacation.

The assault and the reasonable, but slightly critical staff statement sent Ms. McGuire into a psychotic suicidal crisis. The auditory hallucinations became loud and constant, telling her that the assault was her fault because she was a despicable person. The voices called her a slut and a whore, also responsible for her childhood sexual abuse. They commanded her to kill herself by swallowing needles and pins.

Ms. McGuire is proud of herself that she did not succumb to the voices. After calling all her other resource people, she contacted me on vacation. She was intensely apologetic, but needed my reassurance that she was not a bad person, in order to fight off her suicidal thoughts.

I am humbly petitioning the court to grant Ms. McGuire the least penalty, which is reasonable and consistent with the law. She is a guilt-ridden person, tormented by shame and self-humiliation. Intensive therapy for the past year has almost certainly saved her life. Her dependency on treatment is laudable, but is not automatically transferable to another institution, in the way that physical medical care would be. She needs the treatment that I and the Care Connection program can provide. Her attachment to her son and her mother are important sustaining relationships. I am certain that separation from treatment and her family would result in her psychosis taking over and precipitating her suicide.

I have reviewed the report provided by the prosecution, regarding the psychiatric facilities available within the penal system. These facilities are likely adequate for management of most psychiatric illnesses, but Ms. McGuire's case is exceptional. As I mentioned previously, she is the most suicidal patient, who has not successfully committed suicide, whom I have cared for in my 35 years as a psychiatrist. The main reason for her suicidal risk, along with intangibles, is that she has a particularly malignant combination of psychotic illness and posttraumatic stress disorder. I believe it is generally well known that a person who is fully committed to suicide will succeed eventually, despite the best efforts of an institution. I am certain this would occur if she were incarcerated, because psychosis would take over without the current balancing forces of treatment and family support.

Thank you for your kind consideration of these matters.

Sincerely,

Laurence Greenwood, M.D.

Laurence Greenwood, M.D.