UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 05-324 (RJL) |
| | : | |
| v. | : | |
| | : | |
| TRACEY MCGUIRE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MEMORANDUM IN AID OF STATUS HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, herewith responds to defendant Tracey McGuire's memorandum in aid of sentencing (hereinafter "Defendant's Memorandum"). In particular, defendant claims that her physical and mental conditions call for a probationary sentence with home monitoring, rather than incarceration as required under the United States Sentencing Guidelines (hereinafter "USSG"). For the reasons previously set forth in is sentencing memorandum, as well as those set forth below, the government opposes defendant's request. Instead, especially in light of the ability of the Bureau of Prisons to appropriately address defendant's physical and mental conditions, the government requests that defendant be given a sentence under the USSG, although at the low end of the applicable range of 18-24 months.

**A.   FACTUAL BACKGROUND**

1. On August 31, 2005, a one-count Information was filed against defendant charging her with wire fraud. Presentence Investigation Report ("PSR"), at page 3, ¶ 1. This charge resulted from a scheme in which defendant embezzled approximately $221,562.75 from a dentist for whom she worked as an office manager. *Id.*, at pages 3-4, ¶¶ 9-11.

2. On October 14, 2005, defendant pled guilty to this offense. *Id.*, at page 3, ¶ 3. Defendant was released on a personal recognizance bond pending sentencing. *Id.*, at page 1.

3. At the time of this offense, defendant had two prior convictions in Virginia, one for fraud and one for embezzlement. *Id.*, at page 9, ¶¶ 44-45.

4. Under the USSG, defendant has a total offense level of 15, with a criminal history category of I, which results in a sentencing guidelines range of 18-24 months in Zone D. *Id.*, at page 16, ¶ 92.

5. By Order filed on February 5, 2007, the Court required a report from the Bureau of Prisons (hereinafter "BOP") as to how it would handle defendant as a prisoner, considering her physical and mental ailments, including sever suicidal tendencies.

6. On March 13, 2007, BOP sent to the Court and the parties a five-page document entitled Forensic Record Review submitted by the Chief Psychologist and the Chief Psychiatrist at the Federal Medical Center (hereinafter "FMC"), Carswell, in Fort Worth, Texas (hereinafter "BOP Report"). In the report, the authors state their "professional opinion [that] FMC Carswell is fully capable of treating a female defendant with Ms. McGuire's mental and physical conditions, providing monitoring and oversight on a day-to-day basis, and responding to her clinical conditions so as to minimize her risk for suicide while providing optimal treatment in a highly structured and controlled environment." BOP Report, at page 5.

7. Presently, this matter is set for a status hearing before the Court on Friday, April 27, 2007, at 2:30 p.m.

8. At 9:03 p.m., on April 24, 2007, defendant, through her attorney, filed a Memorandum in Aid of Status Hearing, with a three-page attachment from defendant's treating psychiatrist/doctor,

Laurence Greenwood (hereinafter "Dr. Greenwood's letter"). Defendant started seeing Dr. Greenwood about three months after her guilty plea in this matter. In his memorandum, defense counsel asserts that defendant should be given a probationary sentence with home monitoring based on the circumstances of this case. The government herewith submits its opposition to defendant's request.

### B. DISCUSSION

In its report, BOP, following its review of numerous records relevant to defendant's conditions, reported that it can appropriately handle defendant as a prisoner. In its report, BOP described the FMC, Carswell, facility and its staff as "the medical and psychiatric referral facility for females in BOP." BOP Report, at page 2. It also discussed the expected plan of care for defendant. *Id.*, at page 4. Finally, as discussed above, it set forth the authors' opinion as to its ability to care for defendant. *Id.*, at page 5.

In his memorandum, defense counsel asserts his belief that FMC, Carswell, would not be an appropriate facility for defendant to serve her sentence. Defendant's Memorandum, at page 2. The alleged basis for this conclusion is:

> because of the effect on her being so far away from her eleven year old son, as well as being away from her home in Prince George's County, Maryland, in light of the reports from her psychiatrist and the numerous other medical, psychiatric and psychological reports, and her highly structured treatment regime at the Care Connection program.

*Id.* The government will address these contentions in reverse order below.

As to a structured treatment program, FMC, Carswell, would provide a much more structured, supervised environment than defendant is presently receiving at an out-patient facility. In fact, according to Dr. Greenwood's submission, while attending the Care Connection, defendant

has had to have, on occasion, a more structured, in-patient environment, either at the Psychiatric Institute of Washington, or Southern Maryland psychiatric unit. Dr. Greenwood's letter, at page 2. Also, as Dr. Greenwood notes, defendant "continues to be triggered by criticism, fears of rejection, or feeling verbally or physically threatened, into psychotic states with very strong suicidal urges." *Id.*, at page 1. Defendant had a "recent crisis" that effected one of these triggers "while riding on the van with other patients to the Care Connection program[.]" *Id.*, at page 2. That is, she had a verbal and physical altercation with a male patient. *Id.* Dr. Greenwood, however, was not available to assist defendant because he was on vacation at that time. *Id.* An in-patient treatment program at FMC, Carswell, by contrast, could provide the structure and treatment for defendant that would provide her appropriate care and support, as well as 24-hour coverage, as set forth in the BOP report.

     As to the reports of Dr. Greenwood and other professionals, BOP considered those in its evaluation of defendant. BOP Report, at page 1. This matter, therefore, basically comes down to two contrasting opinions. First, BOP, the purpose of which organization is to handle all sorts of federal prisoners, including ones with physical and mental problems, *see* United States v. Harpst, 949 F.2d 860, 863 (1991) (BOP "is legally charged with the responsibility of providing adequate facilities and programs for suicidal inmates"), opining that "FMC Carswell is fully capable of treating" defendant. BOP Report, at page 5. By contrast, Dr. Greenwood gives his opinion that defendant "needs the treatment that I and the Care Connection provide." Dr. Greenwood's letter, page 3. The government respectfully submits that clearly BOP's position should be given greater weight for numerous, obvious reasons.

     Finally, as to defendant being away from her home and child, these, unfortunately, are normal consequences of criminal behavior. *See* 28 U.S.C. § 994(e) (Congress directed the Sentencing

4

Commission to "assure that the guidelines and policy statements . . . reflect the general inappropriateness of considering the . . . family ties and responsibilities . . . of the defendant"); USSG § 5H1.6 (inconvenience and even harm to a criminal defendant's family are normal results of a criminal act, and ordinarily do not warrant leniency).  Defendant, in her sentencing memorandum, states she needs to see her son and mother for "emotional support."[1]  Defendant's Sentencing Memorandum, at page 32.  Obviously, there are other ways such emotional support can be provided, *e.g.*, regular letters, phone calls, e-mails.  This is not, however, an exceptional circumstance that would warrant a non-guidelines sentence.  *See* United States v. Dyce, 91 F.3d 1462, 1465-68 (D.C. Cir.), *cert. denied*, 519 U.S. 1018 (1996) (no extraordinary factors existed in defendant's family situation that would justify departure).  As the court found in Dyce:

> The unfortunate fact is that some mothers are criminals; and, like it or not, incarceration is our criminal justice system's principal method of punishment.  A term in jail will *always* separate a mother from her children.  While we will give due deference to a district court's determination that the impact of that separation will be extraordinary, the record contradicts the district court's finding that such would be the case here. [Defendant] "has shown nothing more than that which innumerable defendants could no doubt establish; namely, that the imposition of prison sentences normally disrupts . . . parental relationships . . . ."

*Id.*, at 1468 (emphasis in original; citation omitted).

---

[1] Defendant's contacts with her son and mother, given her conditions, are not entirely positive experiences.  As to her child, in an April 2006 psychological assessment, defendant made a threatening comment about her children.  Defendant's Sentencing Memorandum, at page 13 (as noted in the report, "[defendant] reports continued SI [suicidal ideation] and plan to 'take my kids with me.'").  As to defendant's mother, Dr. Greenwood noted that defendant's interpersonal problems, particularly with her mother and fiancé, have "been triggers for suicidal crises."   Dr. Greenwood's letter, at page 1.  In his sentencing memorandum, defense counsel notes a history of problems between defendant and her mother.  *See* Defendant's Sentencing Memorandum, at pages 4-5 ("[Defendant] had very difficult dealings with her mother, which included physical and verbal abuse").

5

## C. **CONCLUSION**

For the foregoing reasons, as well as those set forth in the Government's Memorandum in Aid of Sentencing and any that may be presented at a hearing on this matter, the government requests that defendant proceed to sentencing and at that sentencing she receive a USSG sentence at the low end of the applicable sentencing guidelines range of 18-24 months.[2]  For the reasons stated in the BOP Report, the government respectfully requests that the Court recommend defendant's placement at FMC, Carswell.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
Bar No. 498610


/ s /
_____
DANIEL P. BUTLER
Assistant United States Attorney
Bar No. 417718
555 4th Street, NW,  Room 5231
Washington, D.C.  20530
(202) 353-9431
Daniel.Butler@USDOJ.Gov

---

[2]  As the Court of Appeals for the District of Columbia Circuit has noted, "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness." *See* United States v. Bras, ___ F.3d ___, 2007 WL 1158752, *3 (D.C. Cir. April 20, 2007) (*quoting* United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006)).  Moreover, such a sentence would be consistent with the general principle in Dr. Greenwood's letter, that is, his "petitioning the court to grant [defendant] the least penalty, which is reasonable and consistent with the law."  Dr. Greenwood's letter, at page 3.